# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR WILLIAMS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ECOLAB INC.,<br><br>Defendant. | Case No. [-] |

### DECLARATION OF VANESSA PARADA

I, Vanessa Parada, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Vanessa Parada. I am over 21 years of age and fully competent to testify. This testimony is based upon my personal knowledge or my review of records maintained by Ecolab Inc. in the ordinary course of business. If called upon to do so, I could and would testify competently consistent with the testimony herein.

2. I am employed by Ecolab as a Director of Human Resources. In that role, I have access to Company business information and records, including personnel records.

3. Ecolab is incorporated in the state of Delaware and its principal place of business is 1 Ecolab Place, St. Paul, Minnesota 55102.

4. Victor Williams was employed by Ecolab from November 14, 2016 to May 1, 2019 at the Company's Joliet facility. During the term of his employment, he was represented by Local Lodge No. 124 of the International Association of Machinists and Aerospace Workers. A true and correct copy of certain excerpts of the International Association of Machinists and Aerospace Workers collective bargaining agreement ratified by Local Lodge No. 124 is attached hereto as Exhibit 1.

5. A true and correct copy of Mr. Williams' union Membership Application and/or Check-Off Authorization is attached hereto as Exhibit 2.

6. From 2017 to the present, at least 350 people worked at the Joliet facility where Mr. Williams worked.

7. I give this declaration voluntarily and, before signing it, I reviewed it for accuracy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 4, 2021.

*Vanessa Parada*
Vanessa Parada
Director of Human Resources
Ecolab Inc.

- 2 -

# Exhibit B-1



# AGREEMENT
# BETWEEN

# ECOLAB INC.

## AND

# International Association of Machinists and Aerospace Workers

**EFFECTIVE JANUARY 1, 2015 to DECEMBER 31, 2017**

# TABLE OF CONTENTS

**PROVISION**  **PAGE**

| | | | | |
|---|---|---|---|---|
| Agreement | | | --------------------------- | 6 |
| Witnesseth | | | --------------------------- | 6 |

**ARTICLE I:** **Recognition**
| | | | | |
|---|---|---|---|---|
| Section | 1.1 | Recognition | --------------------------- | 6 |
| | 1.2 | Bargaining Unit | --------------------------- | 6 |
| | 1.3 | Union Shop | --------------------------- | 7 |
| | 1.4 | Nondiscrimination | --------------------------- | 7 |
| | 1.5 | Temporary Workers | --------------------------- | 7 |

**ARTICLE II:** **Management Rights**

**ARTICLE III:** **No Strike-No Lockout**
| | | | | |
|---|---|---|---|---|
| Section | 3.1 | No Strike | --------------------------- | 7 |
| | 3.2 | Discipline | --------------------------- | 8 |
| | 3.3 | Union Responsibility | --------------------------- | 8 |

**ARTICLE IV:** **Hours of Work**
| | | | | |
|---|---|---|---|---|
| Section | 4.1 | No Guarantee | --------------------------- | 8 |
| | 4.2 | Normal Work Time | --------------------------- | 8 |
| | 4.3 | Workweek | --------------------------- | 8 |
| | 4.4 | Overtime Premium Pay | --------------------------- | 9 |
| | 4.5 | Lunch & Break Periods | --------------------------- | 9 |
| | 4.6 | Overtime Assignment Procedure | --------------------- | 9 |
| | 4.7 | Reporting Pay | --------------------------- | 13 |
| | 4.8 | Schedule Changes | --------------------------- | 14 |
| | 4.9 | Shift Switches | --------------------------- | 14 |
| | 4.10 | Call In Pay | --------------------------- | 14 |

**ARTICLE V:** **Wages**
| | | | | |
|---|---|---|---|---|
| Section | 5.1 | Rate Schedule | --------------------------- | 14 |
| | 5.2 | New or Changed Job Classifications | --------------------- | 14 |
| | 5.3 | Shift Differential | --------------------------- | 14 |
| | 5.4 | Temporary Upgrade | --------------------------- | 15 |

**ARTICLE VI:** **Union Representation**
| | | | | |
|---|---|---|---|---|
| Section | 6.1 | Stewards | --------------------------- | 15 |
| | 6.2 | Grievance Committee | --------------------------- | 15 |
| | 6.3 | Union Activity | --------------------------- | 15 |
| | 6.4 | Union Notices | --------------------------- | 15 |
| | 6.5 | Union Plant Visitation Rights | ------------------------- | 16 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | 6.6 | Union Meetings & Conventions | ---------------------- | 16 |
|  | 6.7 | Statement of Cause for Discharge | ---------------------- | 16 |

**ARTICLE VII:**      **Grievance Procedures**
Section     7.1     Definition     --------------------------     16
               7.2     Settlement Procedure     --------------------------     16
               7.3     Discharge Grievances     --------------------------     18
               7.4     Time Limits     --------------------------     18
               7.5     Investigation and Processing     --------------------------     18
               7.6     "Working Days" Defined     --------------------------     18

**ARTICLE VIII:**      **Arbitration**
Section     8.1     Selection of the Arbitrator     --------------------------     18
               8.2     Hearing Procedure     --------------------------     19
               8.3     Authority of the Arbitration     --------------------------     19

**ARTICLE IX:**      **Paid Vacations**
Section     9.1     Amount of Vacation     --------------------------     20
               9.2     Eligibility     --------------------------     20
               9.3     Vacation Pay     --------------------------     20
               9.4     Vacation Scheduling     --------------------------     21
               9.5     Pay for Accrued Vacation     --------------------------     21

**ARTICLE X:**      **Paid Holidays**
Section     10.1     Number of Holidays     --------------------------     22
               10.2     Holiday Pay     --------------------------     22
               10.3     Eligibility Requirements     --------------------------     22
               10.4     Work on Holiday     --------------------------     22
               10.5     Layoff Prior to Holiday     --------------------------     23

**ARTICLE XI:**      **Seniority**
Section:     11.1     Plant Seniority - Definition     --------------------------     23
               11.2     Acquiring Seniority     --------------------------     23
               11.3     Identical Seniority Date     --------------------------     23
               11.4     Loss of Seniority     --------------------------     23
               11.5     Transfer to the Unit     --------------------------     24
               11.6     Seniority List     --------------------------     24
               11.7     FMLA     --------------------------     24

**ARTICLE XII:**      **Filling of Vacancies**
Section     12.1     Job Bid Procedure     --------------------------     24
               12.2     Trial Period     --------------------------     26
               12.3     Order of Precedence     --------------------------     26
               12.4     Involuntary Shift Change     --------------------------     26
               12.5     Temporary Assignment     --------------------------     26

| **ARTICLE XIII:** | | **Leaves of Absence** | |
|---|---|---|---|
| Section | 13.1 | Personal Leave | 27 |
| | 13.2 | Medical Leave | 27 |
| | 13.3 | Non-Employment Elsewhere | 27 |
| | 13.4 | Maximum Duration | 27 |
| | 13.5 | Military Service | 28 |
| | 13.6 | Union Leave | 28 |

| **ARTICLE XIV:** | | **Layoff & Recall** | |
|---|---|---|---|
| Section | 14.1 | Layoff | 28 |
| | 14.2 | Recalls | 29 |
| | 14.3 | Cross Training/Cross Assignment | 29 |
| | 14.4 | Notice of Layoff | 30 |

| **ARTICLE XV:** | | **Safety & Health** | |
|---|---|---|---|
| Section | 15.1 | Working Conditions | 30 |
| | 15.2 | Joint Safety Committee | 30 |
| | 15.3 | Injury on Job | 30 |
| | 15.4 | Unreasonably Hazardous Work | 30 |
| | 15.5 | Safety Equipment | 30 |
| | 15.6 | Safety Shoes | 31 |
| | 15.7 | Health & Convenience Facilities | 31 |

| **ARTICLE XVI:** | | **Employee Benefits** | |
|---|---|---|---|
| Section | 16.1 | Coverages | 31 |
| | 16.2 | Plan Documents | 31 |

| **ARTICLE XVII:** | | **Dues Checkoff** | |
|---|---|---|---|
| Section | 17.1 | Checkoff Authorization | 32 |
| | 17.2 | Effective Date | 32 |
| | 17.3 | Omission of Deduction | 32 |
| | 17.4 | Revocation | 33 |
| | 17.5 | Indemnification | 33 |

| **ARTICLE XVIII:** | | **Personal Leave Days** | |
|---|---|---|---|
| Section | 18.1 | Earning Personal Days | 33 |
| | 18.2 | Using Personal Days | 34 |

| **ARTICLE XIX:** | | **Miscellaneous Provisions** | |
|---|---|---|---|
| Section | 19.1 | Voting Time | 34 |
| | 19.2 | Jury Duty | 34 |
| | 19.3 | Death in the Immediate Family | 34 |
| | 19.4 | Departments | 35 |
| | 19.5 | Credit Union | 35 |

| | | | |
|---|---|---|---|
| **ARTICLE XX:** | **Conformation with Law** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 35 |
| **ARTICLE XXI:** | **Termination Effect** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 35 |
| **ARTICLE XXII:** | **Complete Agreement & Waiver** | - - - - - - - - - - - - - - - - - - - - - - | 35 |
| **ARTICLE XXIII:** | **Duration & Termination** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 36 |

**ARTICLE XXIV:** **Drug & Alcohol Policy**

| | | | | |
|---|---|---|---|---|
| Section | 24.1 | General | - - - - - - - - - - - - - - - - - - - - - - - - - - | 36 |
| | 24.2 | Prohibition | - - - - - - - - - - - - - - - - - - - - - - - - - - | 36 |
| | 24.3 | Definitions | - - - - - - - - - - - - - - - - - - - - - - - - - - | 36 |
| | 24.4 | Prescriptions | - - - - - - - - - - - - - - - - - - - - - - - - - - | 37 |
| | 24.5 | Selection of Employees for Drug and/or Alcohol Testing | - - - - - - - - - - - - - - - - - - - - - - - - - - | 38 |
| | 24.6 | Testing Procedures | - - - - - - - - - - - - - - - - - - - - - - - - - - | 38 |
| | 24.7 | Voluntary Treatment & Counseling | - - - - - - - - - - - - - - - - - - - - - - | 38 |
| | 24.8 | Confidentiality & Privacy | - - - - - - - - - - - - - - - - - - - - - - - - - - | 38 |
| | 24.9 | Consequences of Testing Positive, Refusing to be Tested or Tampering with Tests | - - - - - - - - - - - - - - - - - - - - - - | 39 |
| | | **Sign Offs** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 40 |

**APPENDIX A**

| | | |
|---|---|---|
| **Vacation Schedule XX** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 41 |
| **Vacation Schedule YY** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 41 |
| **Rate & Classification Structure** | - - - - - - - - - - - - - - - - - - - - - - | 42 |
| **Letter of Agreement – 24/7 Scheduling** | - - - - - - - - - - - - - - - - - | 43 |
| **Work Schedule** | - - - - - - - - - - - - - - - - - - - - - - - - - - | 44 |
| **Letter of Agreement (Attendance Control Program)** | - - - - - - | 45 |
| **Letter of Agreement (100 / DC102 Staffing Plan)** - - - - - - - - - - - - | 46 |
| **Letter of Agreement (Warehouse Open Positions)** - - - - - - - - - - - | 48 |
| **Letter of Agreement (Temps to Hire)** - - - - - - - - - - - - - - - - - - - - | 49 |
| **C-Shift Plant 100 holiday schedule** - - - - - - - - - - - - - - - - - - - - - - | 50 |
| **C-Shift DC102 holiday schedule** - - - - - - - - - - - - - - - - - - - - - - - | 53 |

## **AGREEMENT**

THIS AGREEMENT is by and between ECOLAB INC., for its operations located at 3001 Channahon Road, Joliet, Illinois and 3501 Corporate Drive, Joliet, Illinois (hereinafter referred to as the "Company"), and LOCAL LODGE NO. 124 of the INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, for themselves and for the employees in the bargaining unit described in Article I (hereafter referred to as the "Union"):

## **W I T N E S S E T H:**

WHEREAS, it is the intent and purpose of the parties hereto to set forth herein their entire agreement covering rates of pay, wages, hours of employment and other conditions of employment to be observed by the parties hereto; to promote and improve industrial and economic relations between the Company and its employees; to secure the efficient and profitable operation of the Company by enabling it to produce its products at the lowest possible cost consistent with fair labor standards and good working conditions; to secure and sustain maximum productivity of each employee covered by this Agreement; to promote cooperation between the Company and its employees; and to provide the procedure for the prompt and peaceful settlement of grievances which may arise between the Company and its employees or the Union to the end that there shall be no interruption or impeding of the production process, work stoppages, strikes, or other interference's with production during the life of this Agreement.

## **ARTICLE I**
## **Recognition**

Section 1.1: Recognition.  The Company recognizes the Union as the exclusive bargaining agent for all employees in the bargaining unit set forth in Section 1.2, below.  Nothing in this Agreement, including but not limited to the recognition of the Union as bargaining agent, is intended as a guarantee, explicit or implied, that any work currently or subsequently performed at the plant shall continue to be performed at the plant, nor as a guarantee or obligation of employment or to continue plant operations or any portion thereof.

Section 1.2: Bargaining Unit.  When ever used in this Agreement, the term "bargaining unit" means the unit for collective bargaining purposes covered by the certification of the National Labor Relations Board in Case No. 13-RC-16611, dated March 15, 1985, namely all production and maintenance employees employed by the Company at its 3001 Channahon Road, Joliet, Illinois and 3501 Corporate Drive, Joliet, Illinois facilities, but excluding managerial employees, office clerical employees, laboratory technicians, truck drivers, professional employees, watchmen, guards and supervisors as defined in the National Labor Relations Act.

   The word "employee" as used in this Agreement shall mean a member of the bargaining unit.  The word "he" shall be deemed to include both male and female employees.

Section 1.3: Union Shop.  Employees who are employed as of the effective date of this contract and employees hereinafter hired into the bargaining unit shall, as a condition of employment, become and remain members of the Union on or after the 31st day following their date of hire or after the 31st day following the date on which this Agreement is signed, whichever is later.  In accordance with applicable federal law, Union "membership" for the purpose of this Section shall be deemed to have been attained or retained by the tendering of the initiation fee and/or periodic dues uniformly required as a condition of membership in the Union.  Students hired for limited time periods (90 days or less which may be extended by mutual agreement) who work in Labor Grade I will not be required to pay Union fees.

Section 1.4: Nondiscrimination.  Neither the Company nor the Union shall discriminate against any employee on account of race, color, creed, sex, national origin, handicap or age, marital status, sexual orientation or citizenship status in accordance with applicable provisions of Federal and State law.

Section 1.5: Temporary Workers.  The company spokesperson at monthly third step meetings will advise the Union on the status and nature of temporary workers. Temporary employees will only be able to perform labor grade 1A work.

## ARTICLE II
## Management Rights

It is understood and agreed that all functions of Management of the enterprise, which are not specifically limited by the express language of this Agreement, are retained by the Company. The functions listed in this Article are illustrations of the responsibilities retained by the Company and are not intended as an all-inclusive list.  Among the responsibilities vested exclusively in the Company are the management of the manufacturing operations, determination of methods of production, and the direction of the working forces, including but not limited to: the right to direct and control all the operations or services to be performed in or at the Plant or by the employees of the Company; to increase or decrease operations; to decide what work, if any, shall be performed in the Plant or by employees; to schedule working hours (including overtime work); to hire, promote, demote, and transfer; to suspend, discipline or discharge for just cause; to relieve employees because of lack of work or for other legitimate reasons; to make and enforce reasonable Plant rules and regulations; to establish production standards and rates for new or changed jobs; to introduce new and improved methods, materials, equipment or facilities; and to change, eliminate or transfer existing methods, materials, equipment or facilities.

## ARTICLE III
## No Strike - No Lockout

Section 3.1: No Strike.  The grievance procedure and arbitration are the exclusive means of resolving grievances and the procedures before the NLRB and courts are the exclusive means of resolving a dispute of any other kind raised by the employees (or Union) with the Company. Accordingly, there shall not be, nor shall the Union encourage or sanction any strike, sympathy strike, picketing, slowdown or intentional interference with operations nor shall there be any lockout during the term of this Agreement.

Employees who leave their workstations as provided for in this Section shall complete their business as expeditiously as possible and shall check in with their Supervisors upon returning to work.

Section 6.4: Union Notices. The Company shall provide two bulletin boards for the posting of Union notices. Only notices pertinent to the Union at the Company's Joliet Plant which have been authorized by a responsible Union official shall be posted. A copy of any notice to be posted on the bulletin board must be provided to the Plant Manager or his authorized representative prior to posting. The Union agrees that notices, which contain partisan political appeals or solicitations, are inappropriate and will be removed by the Union on its own initiative or upon request by the Company.

Section 6.5: Union Plant Visitation Rights. Authorized non-employee representatives of the Union who seek access to Company property for the conduct of Union business must first notify the Plant Manager or his designee by entering through the main entrance. If access to other parts of the Company's premises is required in order to carry out the Union representatives' stated business, the Plant Manager or his designee will make the necessary arrangements within a reasonable time of the request for such access.

Section 6.6: Union Meetings & Conventions. Employees who are Union officers and members of the Grievance Committee, as set forth in Section 6.2, may request permission from the Company for time off of less than one (1) full workday, without pay, to attend Union Meetings, which permission will not unreasonably be denied. Such permission must be requested with as much advance notice as possible, but no later than noon of the workday preceding the day when the requested time off is to occur.

> In addition, a total of not more than three (3) employees may be granted time off, not to exceed five (5) workdays, without pay, to attend Union conventions, educational seminars and leadership seminars. Permission for such time off will not unreasonably be denied, but such permission must be requested not less than thirty (30) days in advance of the day when the requested time off is to begin.

Section 6.7: Statement of Cause for Discharge. Upon request to the Human Resources Department by the Union's Business Representative, the Company will supply to the Union a written statement as to the just cause for the discharge or disciplinary suspension of an employee, except that such a written statement need not be provided until a final decision has been made as to the discipline to be imposed in any given case. Such written statement may be amended without prejudice at any time by the Company prior to the issuance of the Company's answer in Step 3 of the Grievance Procedure. In imposing discipline on a current charge, the Company will not take into account any prior infractions, which occurred more than two (2) years previously.

## ARTICLE VII
### Grievance Procedure

Section 7.l: Definition. A grievance is a claim by an employee that the Company has failed to comply with an obligation assumed by it under this Agreement, which claim involves a question

concerning the meaning, interpretation, or application of this Agreement.

Section 7.2: Settlement Procedure. A grievance shall be raised and discussed in accordance with the following procedure:

Step 1: The employee shall raise the grievance orally with his Supervisor. The Supervisor shall then discuss the grievance with the employee, who may request that his Steward be present at such discussion. Arrangements shall be made so that the Steward is made available to the employee, if requested, within four (4) hours of the employee's request. Following such discussion, the employee or his Steward shall record on a grievance form provided for this purpose, the time, date, and subject of the grievance and the name of the grievant for purposes of determining compliance with Section 7.4. Any resolution or settlement reached at this step shall be without precedent. If no resolution is effected, the Supervisor shall give his answer to the employee orally by the end of the second full working day following the conclusion of the oral discussion. The Supervisor shall then record the time, date and subject of his answer on the grievance form for purposes of determining compliance with the timeliness of filing requirement of Step 2.

Step 2: The Step 1 answer shall settle the grievance unless the employee and/or his Grievance Committee person files the grievance in writing on the grievance form with the Department Manager within five (5) working days following the recorded date of that answer. In order to be processed, the grievance must be timely, must specify the article and/or section of this Agreement allegedly violated by the Company, and must be signed by the employee. The Department Manager or his designee shall request a meeting with the Grievance Committee person to discuss the facts of the grievance. The Department Manager or the Grievance Committee person may call in the aggrieved employee for this meeting. Any settlement reached at this step shall be reduced to writing on the grievance form and signed by the employee, the Grievance Committee person and the appropriate company official. Failing settlement, the Company's answer shall be reduced to writing on the grievance form and given to the Grievance Committee person within five (5) working days of the filing of the grievance in Step 2 or of the meeting, whichever is applicable.

A grievance protesting the suspension of an employee shall be presented in writing at the 2nd step of the grievance procedure within five (5) working days of the employee returning from the suspension.

Step 3: The Step 2 written answer shall settle the grievance unless it is appealed by the Chairperson of the Grievance Committee in writing on the grievance form to the Plant Manager or his designee within five (5) working days of the issuance of the Company's Step 2 answer. The grievance shall be held for discussion at a monthly grievance meeting between the Grievance Committee and Company representatives, to be held on the second Thursday of every month at 1:30 PM unless rescheduled by mutual agreement of the parties, provided that there are grievances to be discussed. Any settlement reached at this Step shall be reduced to writing and signed by the

employee, the Chairperson of the Grievance Committee, and the appropriate Company official. Failing settlement, the Company's answer shall be reduced to writing and given to the Chairperson of the Grievance Committee or his designee within five (5) working days of the monthly Step 3 grievance meeting.

Step 4: The Step 3 written answer shall settle the grievance unless it is appealed in writing by the Union to arbitration as set forth in Article VIII within thirty (30) calendar days of the issuance of the answer, but no later than the day prior to the next regularly scheduled monthly grievance meeting.

Section 7.3: Discharge Grievances. A grievance protesting the discharge of an employee shall be presented in writing at Step 3 of the grievance procedure within ten (10) working days of the discharge, bypassing the first two (2) steps of the grievance procedure. The third step grievance meeting will be held no later than ten (10) working days from the filing of the grievance.

Section 7.4: Time Limits. Grievances shall be raised and settlement attempted promptly. Accordingly, a grievance in order to be considered must be raised no later than five (5) working days after the employee knew or reasonably should have known of the event giving rise to the grievance or, in the case of discharge grievances under Section 7.3, ten (10) working days after the discharge. In the case of a discharge or suspension, the "event giving rise to the grievance" shall be deemed to be the issuance of the discharge or suspension notice to the employee. If not raised within this time limit, the grievance shall be deemed to have been "waived", and it may not be processed further. Similarly, if a grievance is not filed or appealed to any step of the grievance procedure or to arbitration within the time limits specified in Section 7.2, it shall be considered to have been settled on the basis of the Company's last answer. If the Company does not answer a grievance at any step of the grievance procedure within the time limits specified in Section 7.2, the employee and/or the Union may elect to treat the grievance as being denied at that step and immediately appeal the grievance to the next step of the grievance procedure. The specific dates will be determined by mutual agreement of the parties. Either party may be granted an extension by notifying the other party in writing. The arbitration may be rescheduled at a date earlier than the next scheduled quarterly arbitration upon mutual agreement of the parties. Any of the time limits referred to in this Section may be extended by mutual agreement in writing.

Section 7.5: Investigation and Processing. When grievance meetings are scheduled by mutual agreement of the parties during the working hours of any of the employees present, such employees shall be paid for the time spent in such meetings during their regularly scheduled working hours at their regular straight-time hourly rates (plus applicable shift differential). Under no circumstances shall an employee be eligible for overtime pay for time spent in investigating or processing grievances or attending grievance meetings or arbitration hearings, nor shall an employee be paid for time spent in such activities outside his regularly scheduled working hours.

Section 7.6: "Working Days" Defined. As used in this Article, Article VIII and Article XII, the term "working days" means Monday through Friday, excluding Saturdays, Sundays, holidays, and plant shutdown days.

## ARTICLE VIII

**Arbitration**

Section 8.1: Selection of the Arbitrator. When an appeal to arbitration has been made in accordance with the provisions of Section 7.2, Step 4, the parties shall first attempt to agree upon an arbitrator to hear and decide the grievance. If the parties are unable to agree upon an arbitrator within fifteen (15) working days of the appeal to arbitration, the parties shall jointly request the Federal Mediation and Conciliation Service to submit a panel of five (5) arbitrators, and the arbitrator shall be selected in accordance with Federal Mediation and Conciliation Service procedures. Each party retains the right to reject one panel in its entirety and to request a new panel, except that the rejecting party must pay the non-rejecting party's share of any additional charges from the Federal Mediation and Conciliation Service occasioned by such rejection. Nothing herein shall be deemed to constitute an agreement to adopt and abide by Federal Mediation and Conciliation Service rules other than with respect to the procedure for selecting an arbitrator specifically set forth herein. The Union and the Company will however agree to use both the Federal Mediation and Conciliation Service and American Arbitration Association if the Employee Free Choice Act is adopted with either a) the mandatory mediation or b) mandatory arbitration provisions.

Section 8.2: Hearing Procedure. An arbitration hearing shall be held at a site at a time mutually selected by the parties. No more than one grievance shall be submitted for determination by the arbitrator except by written agreement to the contrary; provided that if more than one grievance arose out of the same factual situation (for example, the discipline of more than one employee arising out of the same incident) the grievances may be presented to the arbitrator at the same hearing. In addition, in the event that there is a backlog of grievances to be heard in arbitration, the Company and the Union agree to expedite the arbitration process by scheduling multiple grievances to be heard either by the same arbitrator or by different arbitrators within a reasonable time. At each such hearing each side shall be afforded the opportunity to be represented by representatives of its own choosing, to state a position and to present witnesses on its behalf. Joint expenses of arbitration (including the fees and expenses of the arbitrator and the cost of the hearing room) shall be divided equally between the Company and the Union. Each party, however, shall be responsible for compensating its own representatives and witnesses. Employee witnesses who are excused from work by the Company to attend the hearing shall not lose pay for the time reasonably required to attend the hearing, including travel time, during their regularly scheduled working hours. Permission for employee non-witnesses (such as Union officers and Stewards) to be excused from work to attend arbitration hearings without pay shall not be unreasonably withheld.

Section 8.3: Authority of the Arbitration. The arbitrator shall have no right to amend, modify, nullify, ignore, add to, or subtract from the provisions of this Agreement. He shall consider and decide only the specific issue submitted to him in writing by the parties and shall have no authority to make a decision on any issue not so submitted to him. The arbitrator shall be without power to make decisions contrary to or inconsistent with applicable federal and state law, or rules and regulations having the force and effect of law. The arbitrator shall submit in writing his decision within thirty (30) days following the close of the hearing or the submission of briefs by the parties, whichever is later. The decision shall be based solely upon his interpretation of the meaning or application of the specific terms of this Agreement to the facts of the grievance presented, consistent with applicable law. Consistent with these provisions the arbitrator shall have the authority to make an award and to order an appropriate remedy, if applicable. The award of the arbitrator shall be

# Exhibit B-2

2022646 (BW)

02/05/2017 11:07 FAX   8156428796           IAMAW LOCAL LODGE 124           @011/011

# INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS
## MEMBERSHIP APPLICATION AND/OR CHECK-OFF AUTHORIZATION

Name: Victor Williams          Date: 12/20/2016          Card no. _____
(Mailing) Address: ████████████          M ☐  F ☐  Date of birth ████
City: Joliet          State/Province: IL          Zip/Postal code: 60435
SS no. ████          Email: ████          Phone ████          Hire date: 11/14/2016
Employer: Ecolab          Hourly wage: ████
Class of work: Warehouse person          Years experience: 16          Shift 1☐ 2☐ 3☑

**Membership Application.** Check here: ☑ To the Officers and Members of Lodge No. ____ (the "Lodge" or "Union"), I hereby tender my application for membership in the International Association of Machinists and Aerospace Workers (IAM). I understand that while I may be required to tender monthly fees to the Union, I am not required to apply for membership or be a member as a condition of employment and that this application for membership is voluntary. As a member I agree to obey the Constitution of the IAM and the by-laws of my Lodge and to support the principles of trade unionism, and I authorize the IAM and/or its designated affiliate to act as my representative for collective bargaining.

If former member of IAM: Card no. _____   Lodge no. 124   Location _____   Last dues paid _____

**Check-Off Authorization.** Check here: ☐ I authorize my Employer to deduct from my wages and forward to the Union: (1) monthly membership dues or an equivalent service fee; and (2) any required initiation or reinstatement fee as set forth in the collective bargaining agreement between the Employer and the Union and the by-laws of the Lodge. This authorization shall be irrevocable for one (1) year or until the termination of the collective bargaining agreement between my Employer and the Union, whichever occurs sooner. I agree that this authorization shall be automatically renewed for successive one (1) year periods or until the termination of the collective bargaining agreement, whichever is the lesser, unless I revoke it by giving written notice to my Employer and Union not more than twenty (20) and not less than five (5) days prior to the expiration of the appropriate yearly period or contract term. I expressly agree that this authorization is independent of, and not a quid pro quo, for union membership, but recognizes the value of the services provided to me by the Union. It shall continue in full force and effect even if I resign my Union membership, except if properly revoked in the manner prescribed above.

**Important Notice.** I have examined and acknowledge receipt of the attached "Notice to Employees Subject to Union Security Clauses" (on back of pink sheet). I also understand that IAM members have certain rights and privileges as set forth in the IAM Constitution and in various Federal laws, like the Labor Management Reporting and Disclosure Act (LMRDA). Copies of the IAM Constitution and the LMRDA may be obtained by contacting the IAM General Secretary Treasurer, 9000 Machinists Place, Upper Marlboro, MD 20772. Union membership dues and agency fees are not deductible as charitable contributions for Federal income tax purposes. Dues and agency fees, however, may be deductible in limited circumstances subject to various restrictions imposed by the Internal Revenue Code.

Deduct $125.00 Initiation Fee

Victor Williams          12/20/2016
(Your signature)          (Date)

FORM NO. MR0001-14          This copy to be retained by Local Union No. 124

Dues $60.44

Proposed by: Local Lodge 124          Date: 2/5/17

We, the undersigned Committee, report: Favorable
(Favorable or Unfavorable)

Committee: Amber Blake

Amount paid $ _____          Date _____
Balance of Fee Paid $ _____          Date _____
Initiated ☐     Reinstated ☐          Date _____

**Classification**          **Gender**
____ Journeyman     ____ Helper          ____ Male
____ Specialist     ____ Apprentice          ____ Female
____ Production Worker     ____ Technician
____ Service Worker