IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR WILLIAMS, individually, and on behalf all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>ECOLAB INC,<br><br>        Defendant. | Case No. 21-CV-695<br><br>Hon. Joan H. Lefkow<br><br>Magistrate Judge Sunil R. Harjani |

**DEFENDANT ECOLAB INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

      Settled law establishes that Plaintiff's Illinois Biometric Information Privacy Act claims challenging methods of timekeeping is an ordinary topic of collective bargaining and, as a labor dispute between Plaintiff's Union and the employer, fall under the Labor Management Relations Act. As such, the claims are preempted and must be dismissed as this Court lacks subject-matter jurisdiction. *See Miller v. Southwest Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (affirming dismissal of BIPA claim as preempted by the RLA); *see also Gray v. Univ. of Chicago Med. Ctr., Inc.*, No. 19-CV-04229, 2020 WL 1445608, at *4 (N.D. Ill. Mar. 25, 2020) (collective bargaining agreement governing plaintiff's employment preempted BIPA claim in accordance with Section 301 of the LMRA). Alternatively, Plaintiff's BIPA claims are preempted by the exclusive remedy provision of the Illinois Workers' Compensation Act, which governs alleged injuries arising during the course of one's employment. Finally, Plaintiff's claims fail for the additional reason that he failed to bring them within the proper limitations period.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(h)(3) provides that a court must dismiss an action for lack of subject matter jurisdiction, and Rule 12(b)(1) permits a party to move for dismissal on that basis. Fed. R. Civ. P. 12(h)(3), (b)(1). Although the court accepts all well-pleaded factual allegations as true, the party opposing the 12(b)(1) motion has the burden of proof in demonstrating subject matter jurisdiction. *Gray*, 2020 WL 1445608, at *2. A court may look beyond the pleadings to consider evidence that has been submitted on a motion to dismiss for lack of subject matter jurisdiction. *See*, *e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

LMRA preemption arguments are properly considered and upheld under Rule 12(b)(1) for lack of subject matter jurisdiction. *See, e.g.*, *Frisby v. Sky Chefs, Inc.*, No. 19 C 7989, 2020 WL 4437805, at *4 (N.D. Ill. Aug. 3, 2020) (BIPA claims preempted by Railway Labor Act); *Gray*, 2020 WL 1445608, at *3-4 (BIPA claims preempted under LMRA); *Fernandez v. Kerry, Inc.*, No. 17-cv-08971, 2020 WL 7027587, at *6 (N.D. Ill. Nov. 30, 2020) (same); *Williams v. Jackson Park SLF, LLC*, No. 19-CV-8198, 2020 WL 5702294, at *2-3 (N.D. Ill. Sept. 24, 2020) (same). Any "nonfrivolous argument" that the dispute arises under the labor contract requires interpretation of the CBA, and the suit must be dismissed. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993).

Dismissal also is available under Rule 12(b)(6) if a pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court must accept all well-pleaded facts as true and draw reasonable inferences in favor of plaintiffs, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must allege "more than labels and conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Bonnstetter v.*

2

*City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). Moreover, "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewawrt Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

## ARGUMENT

I. **The LMRA Preempts Plaintiff's BIPA Claims**

  The LMRA preempts claims grounded on rights created by collective bargaining agreements and claims that are "substantially dependent" upon the interpretation of a collective bargaining agreement. *Gray*, 2020 WL 1445608, at *2 (quoting *Caterpillar v. Williams*, 482 U.S. 386 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). BIPA claims are preempted, for example, even where the CBA is silent on biometric information. *Williams*, 2020 WL 5702294, at *3.

  The method by which employees clock in and out of work is a proper subject of bargaining between employers and unions. Indeed, it is a *mandatory* subject of bargaining. *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019). In *Miller v. Southwest Airlines Co.*, the plaintiffs brought suit for alleged violations of BIPA stemming from their use of a biometric scanning timekeeping system. *Id.* at 901. The defendants argued that the union consented to the use of the system through the CBA's management rights clause, and that any dispute should be submitted to an adjustment board. *Id.* The Seventh Circuit agreed, finding "no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers" and affirmed the district court's dismissal for lack of subject matter jurisdiction. *Id.* at 903, 905, *affirming*, No. 18 C 86, 2018 WL 4030590 (N.D. Ill. Aug. 23, 2018). The court further clarified that whether the union "consent[ed] to the collection and use of biometric data, or perhaps

3

grant[ed] authority through a management-rights clause" was a question properly submitted to the adjustment board. *Id.* at 903. In addition to methods of timekeeping, retention and destruction schedules and whether employers "may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.*

The *Miller* Court also found that States "cannot remove a topic from the union's purview and require direct bargaining between individual workers and management." *Id.* Indeed, BIPA provides that a "worker *or an authorized agent* may receive necessary notices and consent to the collection of biometric information," making clear that BIPA did not attempt to remove timekeeping procedures as a proper subject of labor negotiations. *Id.* (citing 740 ILCS 14/15(b)); *see also* 740 ILCS 14/15(d)(1) (employee or "legally authorized representative consents to the disclosure"); *Williams*, 2020 WL 5702294, at *3 (noting BIPA allows unions to act on members' privacy rights). And whether a union did give consent or otherwise grant authority must be determined by administrative process. *Miller*, 926 F.3d at 903.

Rights that involve a subject of mandatory bargaining fall clearly within Section 301 preemption. *See Miller*, 926 F.3d at 904. An employer's timekeeping procedure is a subject of mandatory bargaining and may implicate the privacy rights of employees. *Id.*; *Frisby*, 2020 WL 4437805, at *4 (dismissing preempted BIPA claims that "involve[d] data privacy rights common to all of the defendants' employees"). Accordingly, the union's authority must be considered, and employees may not bypass the CBA by bringing suit under the BIPA. *Miller*, 926 F.3d at 904 ("[I]t is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf."); *see also Gil v. True World Foods Chicago, LLC*, No. 20 C 2362, 2020 WL 7027727, at *3 (N.D. Ill. Nov. 30, 2020).

4

Courts confirm that the *Miller* analysis controls the preemption of BIPA claims under the LMRA; the preemption standards of the RLA and LMRA are "virtually identical." *Gil*, 2020 WL 7027727, at *2 ("District courts within this circuit have uniformly followed *Miller* and have found that BIPA claims from unionized employees are preempted by federal labor law."); *see also Gray*, 2020 WL 1445608, at *2 (applying *Miller* and finding BIPA claims preempted by the LMRA); *Williams*, 2020 WL 5702294, at *2 (same); *Fernandez*, 2020 WL 7027587, at *6 (same).

Here, Plaintiff was represented by the International Association of Machinists and Aerospace Workers, AFL-CIO, Local Lodge 124 (the "Union) during his employment with the Company. Ex. A-2, Williams Union Application. The terms of his employment were governed by a comprehensive Collective Bargaining Agreement ("CBA") executed by Ecolab and the Union. *See* Ex. A, Declaration of Vanessa Parada, at ¶¶ 4-5; Ex. A-1, CBA Excerpts. The Union served as Plaintiff's "exclusive bargaining agent" with respect to "collective bargaining purposes" for him and "all production and maintenance employees" employed by the Company. Ex. A-1, CBA Excerpts, art I. The CBA covered Plaintiff's hours of work, hourly and overtime wage rates, benefits, and grievance and arbitration procedures. *Id.*

Furthermore, the CBA shows that the Union is Plaintiff's "exclusive bargaining agent." Ex. A-1, CBA Excerpts, art. I; *see also Williams*, 2020 WL 5702294, at *1 (union was plaintiff's "sole collective agent for Local 1546's members"); *Miller*, 2018 WL 5249230, at *2 ("Determining whether the union acted as Plaintiffs' 'legally authorized representative' as that term is defined under BIPA … requires consideration or interpretation of the CBAs."); *Gray*, 2020 WL 1445608, at *4 ("[T]he union was the 'legally authorized representative' of Plaintiff for BIPA purposes."). Moreover, Williams has asserted a right that deals with a mandatory subject of

5

collective bargaining, that is his rights under BIPA as related to his employer's timekeeping procedures. *Miller*, 926 F.3d at 903-04; *Frisby*, 2020 WL 4437805, at *4 .

Similar to the BIPA cases dismissed pursuant to the LMRA, the CBA governing Williams' employment arguably reserves the Company the right to implement timekeeping procedures. *Compare* Ex. A-1, CBA Excerpts, art. II ("vested exclusively in the Company are the management of the manufacturing operations, determination of methods of production, and the direction of the working forces") *with Miller*, 2018 WL 5249230, at *2 (noting that the CBA "granted Defendant the 'right to manage and direct the work force'"). *See also Gray*, 2020 WL 1445608, at *1 ("control of the premises, and the direction of the nursing force are vested exclusively in" the employer).

The CBA that governs Williams' employment specifically affords the Company the right to control the "direction of the working forces," including the right to "introduce new and improved methods, materials, equipment or facilities; and to change, eliminate or transfer existing methods, materials, equipment or facilities." Ex. A-1, CBA Excerpts, art. II. Plaintiff's claims cannot be resolved without interpreting this language and are thus preempted by the LMRA. *See Brazinski*, 6 F.3d at 1179 ("nonfrivolous" argument that surveillance of employees fell under the CBA required interpretation of the management rights clause).

The meaning of the management rights clause and whether the Union and Company bargained over timekeeping procedures requires interpretation of the CBA, and this Court should not partake in this analysis. *See, e.g.*, *Miller*, 2018 WL 5249230, at *2 ("Because the interpretation of these provisions of the CBA may bear on Plaintiffs' BIPA claim, we cannot resolve the parties' dispute in federal court."). Rather, the determination that such a dispute exists, and is not frivolous, compels dismissal so that it may be resolved pursuant to the grievance and arbitration procedure,

6

as agreed to by the Company and Plaintiff's Union. The CBA provides that any grievance arising under the CBA "involves a question concerning the meaning, interpretation, or application of this Agreement." Ex. A-1, CBA Excerpts, art. VII. Accordingly, the claims alleged in the Complaint must be appropriately resolved according to the CBA's prescribed grievance and arbitration procedure. *Id.* art. VII-VIII. And, Plaintiff's BIPA claims are subject to dismissal under Rule 12(b)(1).

## II. Plaintiff's BIPA Claims are Preempted by the IWCA

Alternatively, if this Court finds that it has subject-matter jurisdiction, Plaintiff's claims still fail because they do not state a claim upon which relief can be granted as they are preempted by the Illinois Workers' Compensation Act. *See* Fed. R. Civ. P. 12(b)(6). The IWCA provides that "no common law *or statutory right* to recover damages from the employer … for injury [] sustained by any employee … is available to any employee who is covered by the provisions of this Act." 820 ILCS 305/5(a) (emphasis added). The IWCA further provides that "the compensation herein provided … shall be the measure of the responsibility of any employer … for accidental injuries … arising out of and in the course of [] employment." 820 ILCS 305/11; *see also Folta v. Ferro Engineering*, 43 N.E.3d 108, 113-14 (Ill. 2015) ("a 'compensable' injury [is] one suffered in the line of duty, which mean[s] that the injury arose out of or in the course of employment"). The IWCA is employees' exclusive remedy for workplace injuries, and employees do not have an independent cause of action. *See, e.g.*, *Folta*, 43 N.E.3d at 113.

Plaintiff purports that his BIPA claims arise out of his use of time clocks at Ecolab's facility. ECF No. 1-1, Complaint ¶¶ 2-4, 44-46. Specifically, he alleges that his use of the time clock was "a condition of employment," *id.* at ¶ 3, and that upon hire Ecolab required him to scan his fingerprint to use as a method to track his time worked, *id.* at ¶ 44. Plaintiff's alleged injury "arises out of and in the course of [] employment," and therefore falls under the IWCA. *See, e.g.*,

7

*Folta*, 43 N.E.3d at 113-14. Plaintiff's exclusive remedy is to seek relief pursuant to the IWCA. *See* 820 ILCS 305/5(a) ("no common law or statutory right … other than the compensation herein provided"); 820 ILCS 305/11 ("the compensation herein provided … shall be the measure of the responsibility of any employer"). Accordingly, Plaintiff's BIPA claims are preempted by the IWCA and subject to dismissal under Rule 12(b)(6).

### III. Plaintiff's Claims Are Time Barred

Plaintiff's claims fail also because he seeks to recover for conduct that occurred outside the applicable limitations period. Because BIPA does not provide a statute of limitations, the Court must make a legal determination as to the proper limitations period under Illinois law. In situations such as this, Illinois courts review existing statutes of limitations and apply the most specifically applicable one. *See Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill.2d 190 (Ill. 1992) (holding that a specific statute of limitations applies over a general statute of limitations). The most specific applicable statute of limitations here is the one-year statute of limitations applicable to privacy claims. 735 ILCS 5/13-201. The privacy statute of limitations under Section 5/13-201 (entitled "Defamation – Privacy") applies to alleged violations of the Biometric Information Privacy Act because the type of injury at issue is, as the name indicates, privacy.

Aside from the express title of BIPA, the case law interpreting BIPA and its legislative history all point to the conclusion that the type of injury at issue with BIPA is privacy. The Illinois Supreme Court in *Rosenbach v. Six Flags Entertainment Corp.* signaled that BIPA is fundamentally a privacy statute when it stated, "our General Assembly has codified that individuals possess a right of privacy in and control over their biometric identifiers and biometric information." 129 N.E.3d 1197, 2019 IL 123186, ¶33 (Ill. 2019). The Supreme Court's language compels the conclusion that a violation of BIPA would be limited to a one year limitations period. *Id*.

Plaintiff alleges he worked from November 2016 to May 2019 and that his privacy interests were invaded when he allegedly was required to scan his fingerprint upon hire in November 2016, ECF No. 1-1, Complaint ¶¶ 43-44, 84, but he did not file his Complaint until December 7, 2020, long after the one-year limitations period had expired. His claims, therefore, should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court DISMISS all of Plaintiff's claims.

Dated: February 12, 2021

Respectfully submitted,

s/ Efrat R. Schulman
Michael J. Gray
mjgray@jonesday.com
Efrat R. Schulman
eschulman@jonesday.com
Elsa Andrianifahanana
eandriani@jonesday.com
JONES DAY
77 West Wacker, Suite 3500
Chicago, IL 60601.1692
Telephone: +1.312.782.3939

*Attorneys for Defendant Ecolab Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Efrat R. Schulman
Efrat R. Schulman
*One of the attorneys for Defendant Ecolab*