IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 21 C 695 ) ) Judge Joan H. Lefkow |
| ECOLAB INC., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Victor Williams brings this putative class action against Ecolab Inc. for alleged violations of the Illinois Biometric Information Privacy Act (BIPA), 740 Ill. Comp. Stat. 14/1 *et seq*. Before the court is Ecolab's motion to dismiss all counts for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(h)(3), (b)(1), and for failure to state a claim under Rule 12(b)(6). Alternatively, Ecolab moves to dismiss all counts as barred by the exclusivity provision of the Illinois Workers' Compensation Act (IWCA), 820 Ill. Stat. Comp. 305, *et seq.*, or for untimeliness. For the reasons stated below, Ecolab's motion to dismiss is granted because, although the case was properly removed, this court lacks jurisdiction over the subject matter of the dispute.

**BACKGROUND**[1]

Ecolab provides water, hygiene, and energy technology and services. Williams worked at Ecolab's facility in Joliet, Illinois, as a warehouse worker from November 2016 to May 2019. As an employee, Williams enrolled in Ecolab's employee database(s), which used his fingerprints to

---

[1] The facts are taken from Williams' complaint and are presumed true for the purpose of this motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

monitor time. Williams had to scan his fingerprint before and after his shift. Williams alleges that Ecolab's use of employee fingerprints to track when employees clock in and out violates BIPA.

During relevant times, Williams' employment was governed by a collective bargaining agreement (CBA) specifying the terms and conditions of the members' employment between Ecolab and Local Lodge No. 124 of the International Association of Machinists and Aerospace Workers (the union).[2] The union was the exclusive bargaining agent for Williams and all putative class members.

The CBA contains a management-rights provision granting Ecolab control over "[m]anagement of the enterprise" and "direction of the working forces," including the right "to make and enforce reasonable Plant rules and regulations"; "to introduce new and improved methods, materials, equipment or facilities; and to change, eliminate or transfer existing methods, materials, equipment or facilities." The CBA also specifies that the grievance and arbitration process outlined therein is "the exclusive means of resolving grievances."

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court accepts all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the

---

[2] Exhibits to a motion to dismiss that are referred to in the complaint and are central to a plaintiff's claims are to be considered on a motion to dismiss just as if the plaintiff had attached them as exhibits to her complaint. *Wright* v. *Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). When allegations in a complaint conflict with exhibits attached to a motion to dismiss that are considered, the exhibits control when they reveal facts that foreclose recovery as a matter of law. *Whirlpool Fin. Corp.* v. *GN Holdings, Inc.*, 873 F. Supp. 111, 123 (N.D. Ill. 1995), *aff'd*, 67 F.3d 605 (7th Cir. 1995).

2

non-movant's favor. *Sapperstein* v. *Hager,* 188 F.3d 852, 855 (7th Cir. 1999). "Where evidence pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996)) (internal citations omitted). Under Federal Rule of Procedure 12(h)(3), if at any time a court determines that subject matter jurisdiction does not exist, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## **ANALYSIS**[3]

### I. Standing

At the threshold, Williams challenges Ecolab's removal of the action, arguing that it must be remanded to state court because he lacks Article III standing to pursue claims for violations of section 15(a) of BIPA in federal court. As the party asserting federal jurisdiction in this case, Ecolab bears the burden of establishing Article III standing. *See Bryant* v. *Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020). Article III standing requires that (1) a plaintiff "have suffered an actual or imminent, concrete and particularized injury-in-fact"; (2) there exist "a causal connection between his injury and the conduct complained of"; and (3) there be "a likelihood that this injury will be redressed by a favorable decision." *Id.* at 620–21 (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Only the first criterion is at issue here because any injury Williams suffered was caused by Ecolab's failure to comply with BIPA and is redressable with statutory damages.

---

[3] This case was removed under 28 U.S.C. 1446 based on the doctrine of complete preemption by the Labor Management Relations Act, as well as the removal provisions of the Class Action Fairness Act (CAFA). 28 U.S.C. § 1332(d). Because the first basis establishes the existence of a federal question, *see, e.g.*, *Miller* v. *Southwest Airlines*, 926 F3d. 898, 904–05 (7th Cir. 2020), the court does not address CAFA.

In *Spokeo, Inc.* v. *Robins*, the Court explained that a "concrete" injury need not be tangible to exist. 136 S. Ct. 1540, 1548–49 (2016). "A legislature may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Bryant*, 958 F.3d at 621 (citing *Lujan*, 504 U.S. at 578)). "A bare procedural violation, divorced from any concrete harm," however, "does not 'satisfy the injury-in-fact requirement of Article III.'" *Id*. A plaintiff must show "that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek* v. *Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Meyers* v. *Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

Williams relies on *Bryant* to demonstrate his lack of standing. There, plaintiff on behalf of a putative class sued the owner and operator of vending machines installed at her work for alleged BIPA violations. 958 F.3d at 619–20. To create accounts to access the machines and make purchases, employees needed to scan their fingerprints. *Id.* at 619. Bryant alleged that the defendant failed to make "publicly available a retention schedule and guidelines for permanently destroying biometric identifiers" as required by section 15(a) of BIPA. *Id*. The court held that because the duty to disclose under section 15(a) "is owed to the public generally, not to particular persons," the defendant's violation of Section 15(a) was procedural and did not create a "concrete and particularized injury" sufficient for Article III standing. *Id.* at 626.

In *Fox* v. *Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020), however, the Seventh Circuit clarified that its holding in *Bryant* was "limited," cautioning that its analysis was narrowly confined to violations of "the section 15(a) duty to *publicly disclose* data retention and destruction protocols." 980 F.3d at 1154. The court maintained that "[t]he invasion of a legally

4

protected privacy right, though intangible, is [otherwise] personal and real, not general and abstract." *Id.* at 1146 (emphasis in original).

Here, as in *Fox*, Williams alleges a broader violation than mere failure to publicly disclose retention and destruction protocols by claiming that Ecolab failed to "develop" and "adhere to" a retention schedule or destruction guidelines. By alleging that Ecolab violated "the full panoply of its section 15(a) duties" resulting in the wrongful retention of his biometric data, as plaintiff did in *Fox*, Williams has pleaded an injury-in-fact that is concrete and particularized and therefore sufficient for Article III standing.

This conclusion is also consistent with *Miller* v. *Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), where the court held that Southwest's use of fingerprint identification raised "the prospect of a material change in workers' terms and conditions of employment" and thus was a concrete injury. *Id*. at 902. "Either the discontinuation of the practice, or the need for the air carriers to agree to higher wages to induce unions to consent, present more than a bare procedural dispute." *Id*. (citing *Robertson* v. *Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018)).

Accordingly, Williams has Article III standing to bring his claims in federal court, and remand to the state court is not appropriate.

**II.     Preemption**

Ecolab argues that Williams' BIPA claims are preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, which confers federal jurisdiction over suits by and against a labor organization. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S. Ct. 1904 (1985). Williams argues that Ecolab has failed to make a nonfrivolous interpretation of the CBA that an arbitrator could use to find that the Ecolab's requirement and use of biometric

5

data is either authorized or prohibited by any clause in the CBA that would invoke LMRA procedures.

The LMRA preempts claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 394 (1987) (quoting *Elec. Workers* v. *Hechler*, 481 U.S. 851, 859 n.3 (1987)). "If the resolution of a state-law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley* v. *Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996); *see also Miller*, 926 F.3d at 904 ("[I]f a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law."). This rule applies "even if explicit terms of the collective bargaining agreement may not be on point." *Atchley*, 101 F.3d at 499; *see also Crosby* v. *Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (Section 301 "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract").

Williams's claims parallel those in *Miller*. There, the plaintiff class alleged that the employer's use of employee fingerprints to track when employees clocked in and out violated BIPA's notice, consent, disclosure, and policy publication requirements. The CBA included a management-rights provision, granting the employer broad rights "to manage and direct the work force." *Miller*, 926 F.3d at 900–01. Although the management-rights provision did not mention biometrics, the court found that the plaintiffs' claims involved a mandatory subject of bargaining. *See id.* at 903 ("[T]here can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers—is, indeed, a mandatory subject of

6

bargaining."). Accordingly, the court determined that the plaintiffs had to present their grievances about their employer's alleged violations of BIPA to an adjustment board under the Railway Labor Act (RLA). *Id.* at 900.

Williams alleges substantially identical BIPA violations, and the CBA includes a comparable management-rights provision to the one in *Miller*, granting Ecolab general control over "[m]anagement of the enterprise" and "direction of the working forces," including the right to "make reasonable rules and regulations," to "introduce new and improved methods, materials, equipment or facilities; and to change, eliminate or transfer existing methods, materials, equipment or facilities." *Miller* thus dictates that Williams' BIPA claims must first be presented through the CBA grievance procedure.

That Ecolab bases preemption on the LMRA rather than the Railway Labor Act as in *Miller* is immaterial, given that the preemption standards for both are "virtually identical." *Hawaiian Airlines, Inc.* v. *Norris*, 512 U.S. 246, 260 (1994); *see also Fox* v. *Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1156 (7th Cir. 2020) ("the answer [to whether BIPA Section 15(a) claims are preempted by the LMRA] appears to flow directly from *Miller*").

Based on *Brazinski* v. *Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993), Williams insists that, notwithstanding the similarity in language of the CBA here and that in *Miller*, Ecolab's argument is not a "nonfrivolous argument" that interpretation of the management-rights provision is necessary to resolution of his claims. To the contrary, Ecolab's argument, that use of biometric data to clock in and out is within the bargained-for prerogative of Ecolab to manage the enterprise, direct the work force, and make reasonable rules, is not frivolous. In addition to *Miller*, *Brazinski* supports Ecolab, holding that the employer "ha[d] a nonfrivolous argument that the [video] surveillance of which the plaintiffs complain[ed] [was]

7

authorized, albeit implicitly, by the management-rights clause of the agreement, so that the plaintiffs' claim that the surveillance invaded their privacy [could not] be resolved without an interpretation of the agreement." *Id.* at 1179.

Williams also attempts to avoid *Miller* and its ilk by citing earlier decisions outside the context of biometric privacy law that relied on a need for "clear and unmistakable" language in a CBA to effect a waiver of statutory rights. In *Wright* v. *Universal Maritime Service Corp.*, 525 U.S. 70 (1998), the Court held that there was no waiver of the judicial forum for discrimination under the Americans With Disabilities Act because the CBA lacked "clear and unmistakable" language bringing such a claim within the ambit of the agreement. *Id.* at 79–80. (citing *Metropolitan Edison Co.* v. *NLRB*, 460 U.S. 693, 708 (1983) (internal quotations omitted)). Williams contrasts *Wright* to *14 Penn Plaza LLC* v. *Pyett*, 556 U.S. 247, 248 (2009), where the CBA explicitly required members to submit all claims of employment discrimination to binding arbitration, and the Court held that the waiver was "clear and unmistakable." *Id.* at 274. Williams' argument that his claim is more like *Wright* than *14 Penn Plaza*, however, is simply unpersuasive in light of *Miller*.

The LMRA provides that where a CBA establishes a grievance procedure and interpretation of the CBA is necessary to resolution of a claim, employees must exhaust administrative remedies before bringing suit in federal court. *See Fernandez* v. *Kerry, Inc.*, 17 C 8971, 2020 WL 7027587, at *4 (N.D. Ill. Nov. 30, 2020); *Williams* v. *Jackson Park SLF, LLC*, 19 C 8198, 2020 WL 5702294, at *3 (N.D. Ill. Sept. 24, 2020); *Peatry* v. *Bimbo Bakeries USA, Inc.*, 19 C 2942, 2020 WL 919202, at *4 (N.D. Ill. Feb. 26, 2020); *Gray* v. *Univ. of Chi. Med. Ctr., Inc.*, 19 C 4229, 2020 WL 1445608, at *5 (N.D. Ill. Mar. 26, 2020). Although Williams rightly complains that he cannot obtain relief through that process, this is the state of the law. *See*

*Brezkinski*, 6 F.3d at 1180 (pointing out that section 301 imposes a gap in legal protection for vindication of employees' rights, stating, "So the remedial gap remains—maybe intentionally. Maybe the idea is that if a matter is one that the parties could regulate by contract, … they ought to do so.").[4]

### III.  Joinder

Finally, Williams asks the court to order joinder of the union as a necessary party. He correctly acknowledges that a § 301 claim is not ripe for adjudication. As such, there is no basis to join the union without Williams' having pursued a grievance.

### **ORDER**

Ecolab's motion to dismiss (dkt. 9) is granted for want of subject matter jurisdiction.

Date: August 19, 2021

_____
U.S. District Judge Joan H. Lefkow

---

[4] Because Ecolab's argument under the LMRA is sufficient to resolve the issue of preemption, there is no need to evaluate its alternative arguments that Williams' claims are barred under the IWCA or for timeliness.